UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KURT MOORADIAN,

    Plaintiff,

v.                                                      Case No. 1:19-cv-562
                                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his application for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on February 20, 2018, alleging a disability onset date of November 1, 2014. PageID.71. Plaintiff identified his disabling conditions as post-traumatic stress disorder (PTSD), back problems, knee problems, leg problems, and stomach issues. PageID.246. Prior to applying for DIB, plaintiff earned a GED and had past employment in the United States Military as a warehouse material handler and parts clerk. PageID.81, 247. An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on February 8, 2019. PageID.71-83. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 1, 2014, and that he met the insured status requirements of the Social Security Act through December 31, 2019. PageID.73. At the second step, the ALJ found that

plaintiff had severe impairments of bipolar disorder, adjustment disorder with anxiety, depression, degenerative joint disease, degenerative disc disease, and status post lipoma excision. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.74.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ladders, ropes, scaffolds, ramps, and stairs, balance, kneel, crouch, and crawl. He can perform simple, routine, and repetitive tasks without direct interaction with the general public.

PageID.76-77. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.80-81.

At step five, the ALJ found that plaintiff could perform a range of unskilled, light work in the national economy. PageID.81-82. Specifically, plaintiff could perform work as a laundry worker (250,000 jobs), marker (284,000 jobs), and inspector/hand packager (91,000 jobs). *Id*. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from November 1, 2014 (the alleged onset date) through February 8, 2019 (the date of the decision). PageID.82-83.

### III. DISCUSSION

While plaintiff raised five errors on appeal, his brief does not align with these errors. The Court will address the alleged errors set out in the brief.

**A. The ALJ erred by failing to analyze his PTSD and anxiety under Listings 12.06 and 12.15.**

**1. The Listings**

4

Plaintiff contends that the ALJ erred at Step 3 when she failed to analyze his alleged PTSD under Listings 12.06 (Anxiety and obsessive-compulsive disorder) and 12.15 (Trauma- and stressor-related disorders). As an initial matter, plaintiff is incorrect when he states that the ALJ failed to analyze his conditions; the ALJ explicitly reviewed Listings 12.06 and 12.15. PageID.75. In this regard plaintiff acknowledged that his diagnosis had been changed from PTSD to an adjustment disorder with anxiety. PageID.111 (administrative hearing transcript).

### 2.  Legal standard

"[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). At step three, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *See Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §404.1525(d).

While the regulations do not require an ALJ to address every listing, the ALJ should discuss a listing if the record raises a "substantial question" as to whether the claimant could qualify as disabled under that listing. *Sheeks v. Commissioner of Social Security Administration*, 544 Fed. Appx. 639, 641 (6th Cir. 2013). Here, the ALJ identified Listings 12.06 and 12.15, and determined that plaintiff did not meet the requirements of those listings. In contesting the ALJ's evaluation, plaintiff "must do more than point to evidence on which the ALJ could have based

5

[her] finding to raise a 'substantial question' as to whether he has satisfied a listing." *Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx. 426, 432 (6th Cir. 2014). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id*.

Both Listing 12.06 and 12.15 contain three paragraphs, A, B and C. *See* Listings 12.06 and 12.15. To meet either of these listings, plaintiff must satisfy either paragraphs A and B, or paragraphs B and C. *Id*. The ALJ did not dispute that plaintiff met paragraph A. The Court will review plaintiff's claims that the ALJ improperly addressed his conditions under the paragraph B and C criteria.

### 3. Paragraph B criteria

The ALJ addressed the paragraph B criteria of Listings 12.06 and 12.15 as follows.

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.06 and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

PageID.75.

The ALJ made the following findings with respect to the paragraph B criteria. The ALJ found that plaintiff has a mild limitation in understanding, remembering, or applying information. PageID.75-76.

> The claimant has presented with average intellect on mental status examination and has exhibited an intact memory throughout his treatment history. Although, some treatment records do reflect several missed appointments, which the claimant later reports that he forgot about them. The claimant reports that he forgets to care for

6

> his personal needs and take medications, but again, the record does not reflect any memory deficits. During an interview with agency personnel, the claimant did not exhibit any difficulties with reading, understanding, or writing. (Ex. 4E, 6E, 1F-7F, Hearing Transcript)[.]

*Id*.

The ALJ found that plaintiff had a marked limitation in interacting with others. PageID.76.

> The claimant reports having a long-standing history of anger outbursts and irritability, as well as a fear of going out in public spaces. Both he and his wife report that he does not get along well with others, including friends, family, neighbors, and authority figures. The claimant has participated in anger management therapy, and indicated on other occasions, that he may need to return to the same. (Ex. 6E, 1F-7F, Hearing Transcript)[.]

*Id*.

The ALJ found that plaintiff had moderate limitations in concentrating, persisting, or maintaining pace. PageID.76.

> Treatment records are sometimes remarkable for scattered thoughts and attention, but the claimant generally has intact attention and concentration. In addition, the claimant is rather inconsistent with his course of treatment, seeming to only seek help during times of exacerbated personal life stressors. During the face-to-face interview with agency personnel, the claimant did not have any perceived difficulties with concentrating, talking, answering, or understanding. (Ex. 4E, 6E, 1F-7F, Hearing Transcript)[.]

*Id*.

Finally, the ALJ found that plaintiff had moderate limitations in adapting or managing himself. PageID.76.

> The claimant reported that he does not handle finances and only grocery shops online. He testified that he can drive and manage household chores, further noting that his house is maintained in a meticulous manner. The claimant does report difficulty handling stress and changes in routine, but reported that he can cook and care for his own personal needs. Treatment records indicate that he was caring for his infant nephew for some time and was interested in gaining clearance for a foster care situation. (Ex. 6E, 1F-7F, Hearing Transcript)[.]

*Id*. The ALJ concluded that the paragraph B criteria are not satisfied because plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation. *Id*.

Plaintiff contends that the ALJ erred because there is evidence to support findings that: plaintiff's limitation for interacting with others is "extreme" rather than "marked;" and, that the ALJ erred in finding that plaintiff was only moderately impaired in his abilities regarding "concentrating, persisting, or maintain pace," and "adapting or managing onseself." Plaintiff's Brief (ECF No. 11, PageID.1554). Plaintiff's contentions are without merit, because he has failed to point to specific evidence that demonstrates he reasonably could meet or equal every requirement of paragraph B. *See Smith-Johnson*, 579 Fed. Appx. at 432. Merely citing portions of the medical record is not enough. In this regard, plaintiff has presented no argument or legal authority distinguishing between "marked" and "extreme" limitations. Similarly, plaintiff's disagreement with the ALJ's finding that two areas of functioning were "moderate" limitations says nothing as to whether plaintiff meets the requirements of paragraph B. Accordingly, this claim of error will be denied.

### 4. Paragraph C criteria

As an alternative to paragraph B, paragraph C requires that the claimant establish the following elements:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); *and*
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

Listings 12.06C and 12.15C (emphasis in original).

> The ALJ concluded that plaintiff did not meet the criteria of paragraph C:
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The evidence fails to demonstrate consistent mental health treatment, psychosocial supports, or need of a highly structured setting to diminish the signs and symptoms of the claimant's mental disorders for at least two years.

PageID.76.

Plaintiff contends that the ALJ's blanket assertions with respect to the paragraph C criteria are "completely false" because the medical record contains "a wealth of evidence" that he meets this criteria. PageID.1551-1552. The Court agrees with plaintiff that the ALJ's brief evaluation of paragraph C was not fact specific. However, plaintiff has failed to point to specific evidence that demonstrates he reasonably could meet or equal every requirement of paragraph C. *See Smith-Johnson*, 579 Fed. Appx. at 432. Merely citing portions of the medical record is not enough. Plaintiff has not set out a longitudinal record of his condition and treatment to demonstrate that he has "a medically documented history of the existence of the disorder over a period of at least 2 years," with evidence of "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [his] mental disorder." Accordingly, this claim of error will be denied.

### 5. Due process claim

Plaintiff contends that the ALJ violated his due process rights because he was not given the opportunity to be heard in a meaningful manner and the proceedings were not understandable to a layman claimant. Due process requires that a social security hearing be "full and fair." *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996), *citing Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). "[B]oth the Social Security Act and basic principles of due process

9

require that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits can be denied." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 488 (6th Cir. 2006) (internal quotation marks omitted).

Plaintiff's contention that the ALJ violated his due process rights is without merit. The record reflects that plaintiff received a full and fair hearing. At the administrative hearing, the ALJ advised plaintiff of his right to be represented by an attorney or a non-attorney, and the benefits of representation (*e.g.*, "[a] representative can help explain medical terminology, answer questions with respect to the proceedings currently here before me"). PageID.89. Despite this advice, plaintiff waived his right to representation and decided to represent himself at the administrative hearing. PageID.90-91. Plaintiff had no questions for the ALJ as to how she was going to conduct the hearing and he had no objections to the documents entered in the record. PageID.91-92. There is no evidence that plaintiff was denied a full and fair hearing.

### 6. The ALJ's special duty

Plaintiff also makes a cursory reference to the ALJ's heightened duty owed to an unrepresented claimant. *See* PageID.1151. The ALJ has a "special duty" to develop the administrative record and to ensure a fair hearing for unrepresented claimants when three circumstances exist: the claimant is without counsel; the claimant is not capable of presenting an effective case; and, the claimant is unfamiliar with hearing procedures. *See Wilson v. Commissioner of Social Security*, 280 Fed. Appx. 456, 459 (6th Cir. 2008); *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 856 (6th Cir. 1986). The ALJ's special duty was not triggered in this case. While plaintiff may have been unfamiliar with hearing procedures to some extent, the record reflects that he was capable of presenting an effective case to the ALJ. PageID.87-127. Accordingly, plaintiff's claims of error will be denied.

### B. The ALJ failed to consider the full extent of plaintiff's chronic pain as is required by the Sixth Circuit.

Plaintiff contends that the ALJ failed to consider the full extent of his chronic pain. While it is well-settled that pain may be so severe that it constitutes a disability, "[a]n individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). The ALJ addressed plaintiff's symptoms and the evidence based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling (SSR) 16-3p. PageID.77.

SSR 16-3p sets out the two-step process for evaluating an individual's symptoms: (1) "We determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms;" and, (2) "We evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *See* 20 C.F.R. § 404.1529(c)(1) and (2). The Commissioner also considers other evidence including:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning

11

the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.  PageID.77-80.

The Sixth Circuit set forth a standard for evaluating allegations of disabling pain in *Duncan*, 801 F.2d 847. The "*Duncan* analysis" is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529.  *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994). This standard requires the ALJ to assess whether the claimant has satisfied two requirements: first, the claimant must produce objective evidence of an underlying condition; second, the claimant must either present (1) "objective medical evidence to confirm the severity of the alleged pain arising from that condition," or (2) "the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Duncan*, 801 F,2d at 853.

Plaintiff has met the first prong of the *Duncan* analysis, having established that he has underlying medical conditions of degenerative joint disease, degenerative disc disease, and status post lipoma excision.  PageID.73. However, plaintiff has failed to meet either part of the second prong.  In evaluating plaintiff's claims of disabling pain, the ALJ found that the medical evidence did not support plaintiff's allegation of disabling pain. PageID.77-78.  The ALJ points to plaintiff's activities in 2016.  In October 2016, plaintiff reported intermittent knee pain when running for more than a mile, but the physical examination was unremarkable.  PageID.77.  In November 2016, the claimant reported that he was an avid hunter and had been out hunting three to four days per week.  PageID.79.  In December 2016, plaintiff had chronic pain in his left lower abdomen and upper thoracic spine, but also reported that he had recently dragged a deer after hunting.  PageID.77-78.

The ALJ also referenced the consultative examination in April 2018. At that time, plaintiff reported knee problems, leg problems, stomach problems, and back problems, but "also reported that he could sit, stand, and walk perfectly [fine], but could not run." PageID.78, 1144. In addition, the ALJ noted that plaintiff had minimal treatment records for physical complaints and that "the claimant indicated that he is able to hunt, drag animals through the woods, run, ride bikes, and complete household chores." PageID.80. In short, plaintiff did not meet the second prong of the *Duncan* analysis because the objective medical evidence did not confirm the severity of the alleged pain arising from his medical condition, and, while plaintiff had severe impairments, his objectively determined medical condition was not of a severity that could be expected to give rise to the alleged pain. The ALJ's decision is supported by substantial evidence. This determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Young*, 925 F.2d at 147. Accordingly, plaintiff's claim of error will be denied.

### C. The ALJ misstates the record regarding important facts, resulting in both a residual functional capacity (RFC) and decision that are not supported by substantial evidence.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. While plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence, he presents no legal argument. Plaintiff appears to contend that the RFC determination is flawed because the ALJ reached the RFC after misstating portions of the medical record.

#### 1. Dr. Gilbert's opinion

Plaintiff contends that the ALJ misstated the findings of examining physician Lisa Gilbert, M.D. PageID.1558. Dr. Gilbert's opinion states in pertinent part,

> Regarding the patient's back pain, the patient previously damaged a nerve in his thoracic spine. The patient has severe tenderness to palpation in the midline of the thoracic spine from t1 down to t6 and he does have tenderness to palpation in the midline at l1.

PageID.1148. Dr. Gilbert goes on to state that "[t]he patient is very limited on range of motion of the cervical spine on extension, lateral flexion, and rotation and he is very limited on range of motion of his lumber spine on flexion and lateral rotation." *Id*.

Plaintiff contends that the ALJ misstated Dr. Gilbert's findings, when she stated that "[o]n examination, the claimant was non-tender to palpation." PageID.78, 1559. According to plaintiff, "This claim by the ALJ is simply false, as during this examination Dr. Gilbert in fact noted that he 'has severe tenderness and palpation in the midline of the thoracic spine from t1 down to t6 and he does have tenderness to palpation in the midline at l1.' PageID.1148." PageID.1559. Plaintiff's claim is meritless. The ALJ made two references to palpation. First, "[o]n examination, the claimant was non-tender to palpation, there was no guarding, rebound, or rigidity, and there were no masses felt nor any enlargement of the spleen or liver, but an eight-inch lateral incision was noted on the claimant's abdomen." PageID.78. Later in the decision, the ALJ sets out Dr. Gilbert's statement regarding tenderness on palpation, *i.e.*, "[t]he claimant did also exhibit severe tenderness to palpation in the midline of Tl down to T6 and of the lumbar spine at Ll, as well as decreased range of motion of the cervical spine and the lumbar spine." *Id*. Accordingly, this claim of error will be denied.

### 2. GAF scores

Plaintiff contends that the ALJ made an untrue statement with respect to global assessment of functioning (GAF) scores. The ALJ referenced GAF scores in evaluating Dr. Kriauciunas' opinion, stating in pertinent part:

14

> The undersigned finds the opinion Rom Kriauciunas, PhD, the state agency psychological consultant, to be mostly persuasive, but finds that the claimant needs additional social limitations (Ex. 1A).  The record reflects that the claimant is reluctant to participate in social events and has difficulty interacting with others, otherwise the records reflects that the claimant would be capable of performing the demands of unskilled work on a regular basis. The undersigned finds the varying GAF scores (taken together and not individually) to be reflective of mild to moderate mental limitations (Ex. 1F, 2F, 6F).

PageID.80.

According to plaintiff, the last sentence is untrue because the GAF scores in the record range from 50 to 55, with a GAF score of 50 being indicative of serious symptoms. Plaintiff's Brief at PageID.1560.  In his brief, defendant points out that immediately prior to plaintiff's discharge from the military in September 2014, he had GAF scores of 65 (mild symptoms) and 73-77 (if symptoms are present, they are transient and result in no more than a slight impairment). Defendant's Brief (ECF No. 12, PageID.1582-1583); PageID.478, 495. Defendant also states that plaintiff sought no treatment until January 2016, at which time his GAF score was a 50. PageID.1582-1583; PageID.1007.  Defendant acknowledges that plaintiff's GAF score reached as low as 50, but contends that this is consistent with the ALJ's finding. PageID.1582-1583.

While the Commissioner defends the ALJ's finding that the GAF scores showed only mild or moderate symptoms, he undercuts that finding by noting that the American Psychiatric Association has rejected the use of GAF Scores.  PageID.1582.  *See Richards v. Colvin*, 640 Fed. Appx. 786, 791 (10th Cir. 2016) ("The most recent edition of the DSM omits the GAF scale 'for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors and questionable psychometrics in routine practice.'").

Based on this record, the Court concludes that the ALJ's decision is not supported by substantial evidence.  The ALJ relied on plaintiff's GAF scores in finding Dr. Kriauciunas'

opinion "mostly persuasive" and that plaintiff would be capable of performing the demands of unskilled work on a regular basis. PageID.80. This determination is not supported by substantial evidence for two reasons. First, the ALJ's decision makes a generalized statement regarding the GAF scores without identifying any particular scores or longitudinal trends. Rather, the ALJ simply cited three exhibits which contain over 650 pages of medical records. PageID.290-881, 1414-1479. Second, while the ALJ relies on plaintiff's GAF scores to establish that he has only mild to moderate symptoms, the Commissioner undercuts the ALJ's position by pointing out that the American Psychiatric Association has rejected the use of GAF scores and that GAF scores lack clarity and involve "questionable psychometrics in routine practice." The Commissioner's revelation regarding the utility of GAF scores is nothing new. Courts have questioned the relevance of GAF scores in disability cases for years. *See, e.g., Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) (a GAF score "may have little or no bearing on the subject's social and occupational functioning"). Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should identify the GAF scores which demonstrate only mild to moderate symptoms and then articulate why the GAF scores are relevant to plaintiff's Social Security disability claim.[1]

### 3. Insomnia and neurological evaluation

Plaintiff also contends that the ALJ failed to include insomnia as a severe impairment and that she ignored Dr. Gilbert's statement that "[r]egarding the patient's PTSD, I feel that a full neurological evaluation is critical for the patient." PageID.1148, 1559. However, plaintiff cites no authority for his cursory claims. "[I]ssues adverted to in a perfunctory manner,

---

[1] In reaching this determination, the Court is aware that a re-evaluation of plaintiff's GAF scores may affect his RFC.

16

unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, the court deems these two arguments waived.

### D. The RFC and the hypothetical posed to the vocational expert (VE) do not take the full record into account.

Plaintiff contends that the ALJ failed to address his inability to interact with supervisors and his need for limited contact with supervisors, other staff, and no contact with the public.  PageID.1560.  In this regard, plaintiff contends that the ALJ failed to account for his inability to get along with authority figures such as supervisors. PageID.1560-1562.   While plaintiff contends that the hypothetical questions posed to the vocational expert (VE) and the ALJ's RFC are flawed, he cites no legal authority for this contention.  For this reason alone, this claim of error should be denied.

Despite the lack of argument, the Court will address this claim as a challenge to the VE's conclusion that plaintiff can perform other work in the national economy as a laundry worker, a marker, and an inspector/hand packager.  An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779.

The gist of plaintiff's claim is that if his "angry outbursts and mood disorder is severe enough to require no contact with the general public," then "the evidence clearly also

supports a need for limited interactions with supervisors and co-workers." PageID.1561. It is notable that the state psychological consultant, Dr. Kriauciunas, did not find that plaintiff's mental impairment affected his ability to interact with others in the workplace. The doctor found that plaintiff's only workplace restrictions involved limiting him to "simple, low-stress, routine tasks on a sustained basis." PageID.142. While the ALJ found that Dr. Kriauciunas' opinion was mostly persuasive, she found that plaintiff needed additional social limitations and added such limitations to the RFC by restricting plaintiff to work which involved "simple, routine, and repetitive tasks without direct interaction with the general public." PageID.77, 80. The ALJ's hypothetical question posed to the VE included the restrictions set forth in the RFC, and accurately portrayed plaintiff's physical and mental limitations as reflected in the record. PageID.124. For these reasons, plaintiff's claim of error will be denied.

Furthermore, even if the hypothetical question was flawed, the error was harmless in this case because the ALJ identified simple jobs in which interacting with others is not significant and which require little direct interaction with the supervisor once learned. PageID.82. *See Dictionary of Occupational Titles* (4th Ed. Rev. 1991) ## 302.685-010, 1991 WL 672657 (laundry worker); 209.587-034, 1991 WL 671802 (marker); 559.687-074, 1991 WL 683797 (inspector and hand packager). These jobs take into account plaintiff's claim that he does not get along with supervisors and co-workers. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

## IV.    CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to identify plaintiff's GAF scores which demonstrate only mild to moderate symptoms and then articulate why the GAF scores are relevant to plaintiff's Social Security disability claim.  A judgment consistent with this opinion will be issued forthwith.


Dated:  September 29, 2020              /s/ Ray Kent
                                        RAY KENT
                                        United States Magistrate Judge